IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| Elizabeth Gregg, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 2:17-cv-00482-LSC |
| | ) | |
| NANCY BERRYHILL, | ) | |
| Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF OPINION

## I. Introduction

The plaintiff, Elizabeth Gregg, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for Supplemental Security Income ("SSI"), a period of disability, and Disability Insurance Benefits ("DIB"). Ms. Gregg timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Gregg was fifty years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a high school education. (Tr. at 34.) Her past work experiences include employment as a cashier and a housekeeper. (*Id.*) Ms. Gregg

1

claims that she became disabled on March 18, 2014, when she injured her right hand and forearm during a motor vehicle accident, and suffers from open distal radius and ulna fracture, multilevel degenerative disc disease, and obesity. (Tr. at 16-36.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding

of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The

decision depends on the medical evidence contained in the record. *See Hart v.*

*Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical

evidence in the record" adequately supported the finding that plaintiff was not

disabled).

Similarly, the third step requires the evaluator to consider whether the

plaintiff's impairment or combination of impairments meets or is medically equal

to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix

1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed

impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509

and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R.

§§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or

medically equal a listed impairment, the evaluator must determine the plaintiff's

residual functional capacity ("RFC") before proceeding to the fourth step. *See id.*

§§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine

whether the plaintiff has the RFC to perform the requirements of his past relevant

work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's

impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled.  *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work.  *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the plaintiff can perform other work, the evaluator will find him not disabled.  *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g).  If the plaintiff cannot perform other work, the evaluator will find him disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ first found that Ms. Gregg was insured through the date of his decision. (Tr. at 23.) He further determined that Ms. Gregg has not engaged in SGA since March 8, 2014. (*Id.*) According to the ALJ, Plaintiff's status post right open distal radius and ulna fracture, multilevel degenerative disc disease, and obesity are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 28.) The ALJ did not find Ms. Gregg's allegations to be totally credible, and he determined that she has the following RFC: light work which allows no right upper extremity pushing and/or

4

pulling; no overhead reaching with the right hand; no driving; and no unprotected heights. (Tr. at 30.)

According to the ALJ, Ms. Gregg is unable to perform any of her past relevant work, she is "an individual closely approaching advanced age," has a "high school education," and is able to communicate in English, as those terms are defined by the regulations. (Tr. at 34.) He determined that Plaintiff has "no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case." (*Id*.) Because Plaintiff cannot perform the full range of light work, the ALJ enlisted a vocational expert ("VE") and used Medical-Vocational Rule 201.25 as a guideline for finding that there is a significant number of jobs in the national economy that she is capable of performing, including cashier, parking lot attendant, and mail room clerk. (Tr. at 35.) The ALJ concluded his findings by stating that Plaintiff was not under a disability, as defined in the Social Security Act, at any time through the date of his decision. (Tr. at 36.)

## II. Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone*

*v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its

entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III. Discussion

Ms. Gregg alleges that the ALJ's decision should be reversed and remanded because the ALJ failed to state the weight given to the opinion of one of her treating physicians, pain management specialist Dr. Audra Eason.

The ALJ must articulate the weight given to different medical opinions in the record and the reasons therefore. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The weight afforded to a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

Within the classification of acceptable medical sources are the following different types of sources that are entitled to different weights of opinion: 1) a treating source, or a primary physician, which is defined in the regulations as "your

physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you;" 2) a non-treating source, or a consulting physician, which is defined as "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you;" and 3) a non-examining source, which is "a physician, psychologist, or other acceptable medical source who has not examined you but provides a medical or other opinion in your case . . . includ[ing] State agency medical and psychological consultants . . . ." 20 C.F.R. § 404.1502.

The regulations and case law set forth a general preference for treating medical sources' opinions over those of non-treating medical sources, and non-treating medical sources over non-examining medical sources. *See* 20 C.F.R. § 404.1527(d)(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). Thus, a treating physician's opinion is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford*, 363 F.3d at 1159 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). "Good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's

opinion was conclusory or inconsistent with the doctor's own medical records."
*Phillips*, 357 F.3d at 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); *see also*
*Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good
cause" existed where the opinion was contradicted by other notations in the
physician's own record). In short, an ALJ "may reject the opinion of any physician
when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 F.
App'x 410, 418–19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233,
1240 (11th Cir. 1983)).

The Court must also be aware of the fact that opinions such as whether a
claimant is disabled, the claimant's RFC, and the application of vocational factors
"are not medical opinions, . . . but are, instead, opinions on issues reserved to the
Commissioner because they are administrative findings that are dispositive of a
case; i.e., that would direct the determination or decision of disability." 20 C.F.R.
§§ 404.1527(e), 416.927(d). The Court is interested in the doctors' evaluations of
the claimant's "condition and the medical consequences thereof, not their opinions
of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such
statements by a physician are relevant to the ALJ's findings, but they are not
determinative, as it is the ALJ who bears the responsibility for assessing a
claimant's RFC. *See, e.g.,* 20 C.F.R. § 404.1546(c).

Contrary to Plaintiff's claim, the ALJ did state the weight he was giving to Dr. Eason's opinion: he stated that he gave it "persuasive" weight. (Tr. at 33.) Assuming solely for argument that greater particularity was required, any error would be harmless, as the ALJ clearly relied on Dr. Eason's treatment notes, which were consistent with his ultimate RFC finding. *See Laurey v. Comm'r of Soc. Sec.*, 632 F. App'x 978, 987 (11th Cir. 2015) (holding that "[a]lthough the ALJ never stated the weight given to Dr. Frailing's treatment notes, the ALJ discussed the content of Dr. Frailing's notes, showing that the ALJ considered and gave weight to this medical evidence" and "[w]hile the ALJ did not explicitly address this opinion, nothing in the ALJ's decision is inconsistent with it"). Relatedly, not all progress notes from a doctor are even considered "medical opinions" under the regulations. "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) . . . ." 20 C.F.R. § 404.1527(a)(2). Additionally, despite the ALJ's referring to Dr. Eason as a "treating" physician, an independent review of the record reveals that Dr. Eason may have only seen Plaintiff one time, and such a lack of an ongoing treating relationship would undercut the normal level of deference afforded to treating physician's opinions. *See generally* 20 C.F.R. § 404.1502.

In any event, Plaintiff visited Dr. Eason on April 1, 2015, approximately one year after the March 18, 2014, motor vehicle accident that injured her hand and arm. (Tr. at 455). Plaintiff had experienced pain and limitation of motion in the few months after her accident, but treatment notes from other physicians showed that she exhibited steady improvement following surgery. (Tr. at 25, 33, 274, 368-72, 387-41, 438-49, 554-55, 558). Indeed, Plaintiff exhibited normal range of motion and strength after her stabilizing devices were removed in June 2014. (Tr. at 33, 511, 522, 523, 527). Plaintiff did exhibit a setback in August 2014 due to an infection. (Tr. at 515.) However, Plaintiff's treating orthopedic surgeon, Dr. Ali Kilic, released Plaintiff from treatment and stopped prescribing pain medication in October 2014, only seven months after Plaintiff's accident. (Tr. at 462.) Except for a primary care appointment (tr. at 466-74), Plaintiff did not seek further medical treatment until her April 1, 2015, visit with Dr. Eason.

During the April 1, 2015 visit, Dr. Eason did not assess any specific, work-related limitations. (Tr. at 455). Instead, as the ALJ noted, Dr. Eason stated that Plaintiff had "excellent results from surgery and should continue to improve." (*Id.*) Dr. Eason generally noted that Plaintiff had "great return of [range of motion] of

the hand considering the severity of injuries." (*Id.*)[1] Although Plaintiff reported continued pain, Dr. Eason declined to prescribe opiates, but, instead, prescribed non-steroidal anti-inflammatory drugs ("NSAIDs") and a topical cream. (*Id.*) Dr. Eason explained, "I believe that we can optimize adjuvant pain medications and topicals to improve efficacy while avoiding use of opiates." (*Id.*)

Contrary to Plaintiff's argument, the ALJ did not assume that Plaintiff had no limitations from her arm injury based on Dr. Eason's report. Instead, the ALJ found Plaintiff was limited to light work and included additional limitations to address Plaintiff's right arm impairment such as limited pushing, pulling, and reaching overhead. (Tr. at 30). Nothing in Dr. Eason's report undermines this RFC finding.

The Court finds no error in the ALJ's treatment of Dr. Eason's opinion.

## IV. Conclusion

Upon review of the administrative record, and considering all of Ms. Gregg's arguments, the Court finds the Commissioner's decision is supported by

---

[1]     Plaintiff takes issue with the fact that the ALJ did not recite the entirety of Dr. Eason's sentence quoted above, but instead only summarized that she said that Plaintiff had "great return of [range of motion] of the hand," leaving out the "considering the severity of injuries" portion. (Tr. at 26-27, 33). However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Dyer*, 395 F.3d at 1211.

substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON SEPTEMBER 17, 2018.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704